586 P.2d 1285

Marvin J. ROLLO, Rollo & New Construction Co., Inc., an Arizona Corporation, Underground Contractors Association of Arizona, an Arizona Corporation, Wittman Contracting Co., an Arizona Corporation, McAfee-Guthrie, Inc., an Arizona Corporation, and Swengel-Robbins Contracting Co., Inc., an Arizona Corporation, Appellants,

v.

The CITY OF TEMPE, a political subdivision of the State of Arizona, Appellee.

No. 13196.

Supreme Court of Arizona, In Division.

Nov. 22, 1978.

Mariscal, Weeks, McIntyre & Friedlander by Phillip Weeks and Gerald K. Gaffaney, Phoenix, for appellants.

David R. Merkel, Tempe City Atty. by C. Brad Woodford and Jon Pettibone, Tempe, for appellee.

HOLOHAN, Justice.

Appellant Rollo filed a declaratory judgment action to determine whether a provision in the Tempe City Charter prohibited the City of Tempe from performing construction projects involving expenditures in excess of $5,000 without calling for competitive bidding. In addition, Rollo sought to enjoin the city from engaging in any construction projects in excess of $5,000 unless the project was submitted for public bidding. After the trial on the merits was consolidated with the hearing on the petition for a preliminary injunction, the trial court ruled in favor of the city. We took jurisdiction pursuant to 17A A.R.S.Sup.Ct. Rules, rule 47(e)(5).

Sometime during the year 1975 the City of Tempe installed a water main through the Sunburst Farm Subdivision. Instead of contracting with third parties to install the water main, the city decided to install the water main with its own labor force. The parties stipulated that materials and equipment used in installing the water main in question were acquired through competitive

bidding. In addition, both parties stipulated that the cost to the city of labor by its employees exceeded $5,000.

The appellant contends that the charter of the City of Tempe forbids the expenditure of public funds in excess of $5,000 unless there is competitive bidding. Appellant argues that this limitation applies to the city, and it in effect prevents the city from engaging in public works using its own employees if the expenditure of public funds exceeds $5,000.

Section 5.12(b), the charter provision in question, provides:

"(b) *Formal Bidding.* For expenditures in excess of $5,000.00 the council shall call for formal, public competitive bidding with the results of such bids to be announced at a public meeting."

Appellant argues that if the charter provision applied only to circumstances in which the city contracts with a third party the word "expenditure" would be replaced by the word "contract." Since the charter provision includes the word "expenditure," appellant insists that any work, whether done by third parties or by the city itself, must first be subject to competitive bidding.

The parties have cited and argued the meaning and effect of a number of cases. *See Secrist v. Diedrich,* 6 Ariz.App. 102, 430 P.2d 448 (1967); *Foxen v. City of Santa Barbara,* 166 Cal. 77, 134 P. 1142 (1913); *City of Chicago v. Hanreddy,* 211 Ill. 24, 71 N.E. 834 (1904); *Matthews v. Town of Livermore,* 156 Cal. 294, 104 P. 303 (1909); *Perry v. City of Los Angeles,* 157 Cal. 146, 106 P. 410 (1909); *Buckley v. Pugh,* 137 Misc. 594, 244 N.Y.S. 524 (1930); *Inskip v. Board of Trustees of the University of Illinois,* 26 Ill.2d 501, 187 N.E.2d 201 (1963); *Conley v. City of Shreveport,* 216 La. 78, 43 So.2d 223 (1949). We have considered the cited material, but we believe that the controversy may be resolved by an analysis of the questioned provision in context and as a part of the whole charter.

■ City charters and ordinances are to be construed by the same rules and principles which govern the construction of statutes. *See Arizona Found. for Neurology &*

*Psych. v. Sienerth,* 13 Ariz.App. 472, 477 P.2d 758 (1970). It must also be noted that the Tempe City Charter itself directs that the rule of construction set forth in Section 1.02 be followed:

"The powers of the city under this charter shall be construed liberally in favor of the city, and the specific mention of particular powers in the charter shall not be construed as limiting in any way the general power stated in this article."

In construing the charter liberally as required by Section 1.02 we must also place a reasonable and sensible interpretation on the competitive bidding provision. *See Robinson v. Lintz,* 101 Ariz. 448, 420 P.2d 923 (1966). Furthermore, we believe that placing a fair and sensible construction also involves an interpretation which would effectuate the underlying purposes of a competitive bidding provision. *See Reiter v. Chapman,* 177 Wash. 392, 31 P.2d 1005 (1934).

■■ The purposes underlying the competitive bidding provision are to promote competition, to guard against favoritism, fraud and corruption, and to secure the best work or supplies at the lowest price practicable. *See Signacon Controls, Inc. v. Mulroy,* 32 N.Y.2d 410, 345 N.Y.S.2d 527, 298 N.E.2d 670 (1973); *Gostovich v. City of West Richland,* 75 Wash.2d 583, 452 P.2d 737 (1969); 10 E. McQuillin, *The Law of Municipal Corporations* § 29.29 at 321 (1966).

The section upon which appellant relies is a subsection within the section applicable to competitive bidding. In such situations the statute must be construed as a whole with effect given, if possible, to all its provisions. *City of Phoenix v. Kelly,* 90 Ariz. 116, 366 P.2d 470 (1961); *State Board of Dispensing Opticians v. Schwab,* 93 Ariz. 328, 380 P.2d 784 (1963). The full text of the section provides:

"Section 5.12. COMPETITIVE BIDDING

"(a) *Informal Bidding.* The manager shall obtain informal competitive bids from at least three suppliers or contractors on expenditures between $500.00 and $5,000.00.

"(b) *Formal Bidding.* For expenditures in excess of $5,000.00 the council shall call for formal, public competitive bidding with the results of such bids to be announced at a public meeting.

"(c) *Acceptance of Bids.* The council shall accept those formal bids which, under all circumstances, appear to be in the best interest of the city unless all bids be rejected."

When considered and coordinated with its interrelated parts it becomes clear that the term "expenditures" used in subsection (b) refers to expenditures to suppliers and contractors where the amount exceeds $5,000.

Reading the section as a whole, we find no suggestion that the intent was to eliminate work by city employees on capital improvements where the cost exceeded $5,000.

The judgment of the trial court denying injunctive relief against the City of Tempe is affirmed.

STRUCKMEYER, V. C. J., and GORDON, J., concur.